IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:25-cv-00062-D-RJ

MrBeastYouTube, LLC,

        Plaintiff,

v.

Leroy Nabors,

        Defendant.

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

In the days leading up to his termination of employment, Defendant Leroy Nabors surreptitiously downloaded thousands of confidential documents from his then-employer, Plaintiff MrBeastYouTube, LLC ("Beast"). These documents contain an array of trade secrets, including financial data, memoranda regarding business transactions, employee compensation information, and capitalization tables reflecting highly sensitive information about Beast's investors. Beast demanded, multiple times, that Nabors return these documents. To this day, Nabors refuses.

This is a wrong for which various laws provide remedies. In its Complaint, Beast asserts cognizable claims under those laws. Beast pleads those claims with particularity sufficient to put Nabors on notice of the precise nature of this dispute: Nabors stole Beast's confidential, trade secret documents, and Beast wants them back.

More specifically:

Beast states a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"), alleging (a) the existence of "trade secrets" with sufficient particularity, and (b) the "improper means" by which Nabors acquired them.

Beast states a claim for misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act ("NCTSPA"), sufficiently alleging that (a) the misappropriation occurred in North Carolina, and (b) Nabors acquired Beast's trade secrets without Beast's express or implied consent or authority.

Beast states a claim for breach of contract, because North Carolina does not require new consideration for an employee to enter into a nondisclosure agreement. And even if it did, Beast tendered new consideration when it changed Nabors' job duties.

Beast states a claim for conversion, sufficiently alleging that Nabors violated Beast's dominion over its confidential documents and refuses to return them. Those documents are not "intangible" property not subject to a conversion claim; under North Carolina law, documents—even in electronic form—are subject to conversion claim.

Beast's requests for a permanent injunction and declaratory relief are entirely appropriate and based on claims that are sufficiently pled. Until Beast can proffer evidence at the appropriate procedural juncture, those requests must remain undisturbed and cannot be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For these reasons, and as more fully set forth below, Beast respectfully requests that this Court deny Nabors' motion to dismiss.

## II.     LEGAL STANDARD

In considering a Rule 12(b)(6) motion, "the court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency

of the complaint." *Hawley's Cycle & Camping Ctr., Inc. v. Holiday Kamper Co. of Columbia, LLC*, No. 13-cv-335, 2013 WL 12455298, at *1 (E.D.N.C. Oct. 2, 2013) (Dever III, J.). The court may also "consider documents attached to the complaint." *Id.*; *see also Colo. Bank. Life Ins. Co. v. Academy Fin. Assets, LLC*, No. 23-cv-181, 2023 WL 3996602, at *2 (E.D.N.C. June 14, 2023) (on Rule 12(b)(6) motion, court considers "any materials attached or incorporated into the complaint") (Dever III, J.).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Roberson v. Paul Smith, Inc.*, No. 07-cv-284, 2009 WL 10705410, at *1 (E.D.N.C. Mar. 31, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the allegations must merely be "enough to raise a right to relief above the speculative level . . . ." *Id*. "The purpose of these relatively low pleading requirements is to reduce reliance on pleadings to refine the evidentiary basis for a litigant's claim." *Id.* (citing *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 823 (4th Cir. 1973)). Thus, "[w]here a complaint provides the opposing party enough information to frame an adequate answer," the "pleading standard is met and a Rule 12(b)(6) dismissal is not appropriate." *Id.*

### III.    ARGUMENT

####    A.    Beast states a claim for misappropriation of trade secrets under 18 U.S.C. § 1836 *et seq*.

#####        *1.    Beast sufficiently alleges that Nabors misappropriated "trade secrets."*

Nabors claims that the Complaint should be dismissed because it supposedly "does not contain sufficient details to support its contention that the items in Mr. Nabors' possession are "trade secrets." (ECF No. 18 at 4.) But "a plaintiff is not required to plead a trade secret misappropriation claim with specificity." *Lord Corp. v. S&B Tech. Prods., Inc.*, No. 09-cv-205, 2011 WL 13152459, at *7 (E.D.N.C. Jan. 5, 2011), *adopted*, 2011 WL 13152489 (E.D.N.C. Feb.

3

2, 2011) (Dever III, J.); *Redox Tech, LLC v. Earthworks Solutions LLC*, No. 17-cv-447, 2018 WL 1733984, at *3 (E.D.N.C. Apr. 10, 2018) (same). Rather, a plaintiff must merely plead the claim with "sufficient particularity so as to enable the defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Id.*; *Volt Power, LLC v. Butts*, No. 19-cv-149, 2020 WL 3979659, at *4 (E.D.N.C. July 14, 2020) (same).[1]

Beast has done precisely that. The Complaint alleges that Nabors exfiltrated "thousands of confidential Beast documents, including but not limited to financial data, sensitive memoranda regarding business transactions, private employee compensation information, and capitalization tables containing highly sensitive information about Beast's investors." (ECF No. 1 ("Compl.") ¶ 2.) "[M]uch of the financial data is in draft form," and thus inappropriate for public disclosure, "because investors [in Beast] depend on accurate financial information to guide their decision-making." (*Id.* ¶ 53). The capitalization tables "contain highly sensitive information about its investors and their equity stakes." (*Id.* ¶ 54.) And the memoranda regarding business transactions contain "proprietary elements of Beast's business model," such as "how Beast produces its uniquely successful videos, putting it at a dire competitive disadvantage." (*Id.* ¶ 55.).

Moreover, if there were any doubt about what information is at-issue (and there is not, given the specific allegations made) or the reasons why it is valuable and commercially sensitive (again, there is not), the Complaint ***attached a list of specific files as Exhibit A***. (*Id.* ¶ 2 n. 1). That Exhibit specifically identifies each document Nabors stole, including (1) information about clients and customers of Beast (ECF No. 6 at Page 31, Row 1); (2) personal information about employees

---

[1] In addition to being wrong about the law, Nabors' statement is a remarkable concession: ***he still has Beast's information in his possession***. That is precisely why this lawsuit was brought in the first instance.

of Beast (*id*. at Page 113, Row 4); (3) descriptions of the internal IT network structure of Beast (*id*. at Pages 52–118); (4) capitalization information about investors of Beast (*id*. at Page 693, Row 3); and (5) details and dates of non-public business transactions (*id*. at Page 31, Row 1). *See Colo. Bank. Life Ins. Co.*, 2023 WL 3996602, at *2 (on a motion to dismiss, court must consider "any materials attached or incorporated into the complaint") (Dever III, J.). Beast then moved to seal that information, explaining why it contained sensitive and proprietary information. Nabors, notably, *stipulated* to that sealing, and the Court agreed and ordered it sealed precisely because it "is substantially comprised of commercially sensitive material, such that no less drastic alternative to sealing, *e.g.*, redaction, is available." (ECF No. 14 at 4.) Indeed, "absent sealing, competitors could access this information to the detriment of [Beast's] business interests." (*Id*.) If merely *the list of file names* that Nabors misappropriated merits sealing because of its commercial sensitivity, then surely the *files themselves* merit trade secret protection. (*Id*. at 3 (invoking Beast's "interest in confidential commercial information, such as a trade secret").)

This is more than sufficient to plead a misappropriation of trade secrets claim. *See Volt Power, LLC*, 2020 WL 3979659, at *4 (denying motion to dismiss misappropriation of trade secrets claim, because "the complaint and supporting exhibits . . . identify with particularity the specific files that [plaintiff] claims are trade secret[s]"); *Redox Tech, LLC*, 2018 WL 1733984, at *3 (denying motion to dismiss misappropriation of trade secrets claim, because "Plaintiff's complaint meets [the] pleading standard" by identifying categories of trade secrets such as "pricing," "production rates," "profit margins," and "customer and supplier lists"); *Dental Care Leasing, LLC v. Miller*, No. 19-cv-46, 2019 WL 3822511, at *5 (E.D.N.C. Aug. 14, 2019) (denying motion to dismiss misappropriation of trade secrets claim, where plaintiffs alleged misappropriation of "the study of market demographics, the development of market strategies, the use of industry partners

and technology, and the provision of unique delivery platforms and revenue models," holding that even these general descriptions "contain[] ample detail" sufficient to put defendant "on notice of the claims against him").

Nabors' authorities do not hold otherwise. In *dmarcian, Inc. v. dmarcian Europe BV*, the Fourth Circuit affirmed the district court's holding that the plaintiff's "source code, customer database, and business accounts are all likely trade secrets." 60 F.4th 119, 141 (4th Cir. 2023).

In *Keystone Transp. Solutions, LLC v. Northwest Hardwoods, Inc.*, the court denied summary judgment on a DTSA claim because of "a dispute of material fact as to whether *misappropriation* occurred." No. 18-cv-39, 2019 WL 1756293, at *6 (W.D. Va. Apr. 19, 2019) (emphasis added). Whether the claimant had pled "trade secrets" with sufficient particularity was not at issue. *Id*. And in any event, the plaintiff—a "logistics company"—had successfully "defined what it considers its trade secrets to be," including the "logistics" of "export[ing] . . . forest products." *Id*. at *1 and *5.

In *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, the claimant's purported "trade secrets" were facially insufficient to defeat summary judgment on a misappropriation claim; in discovery, when asked to identify every single alleged trade secret, the claimant identified only "sample requests," "target samples," and generalized categories of customer information. No. 15-cv-589, 2016 WL 740061, at *14 (E.D. Va. Feb. 25, 2016). The court appropriately observed that it was not even "clear what [claimant] means by 'sample request' and 'target sample.'" *Id*. at *15.

In *Design Gaps, Inc. v. Hall*, the plaintiffs described their alleged trade secrets only in broad and conclusory categories, such as "confidential and valuable technical knowledge" and "market knowledge." No. 23-cv-186, 2023 WL 8103156, at *9 (W.D.N.C. Nov. 21, 2023). Unlike here, the

plaintiffs did not attach an actual list of the specific misappropriated files and then identify the trade secret information reflected in those files. *Design Gaps, Inc.* is not instructive here.

> 2. *Beast sufficiently alleges that Nabors obtained its trade secrets by "improper means."*

Nabors next argues that Beast's federal trade secret claim should be dismissed because he had access to Beast's trade secret information while employed there and therefore he could not possibly have used "improper means" to acquire it. (ECF No. 18 at 4.) He is wrong.

*OROS, Inc. v. Dajani* is instructive. There, the court denied a motion to dismiss a DTSA claim, holding that the plaintiff had "satisfied [its] pleading burden" by alleging that "despite [the defendant-employee's] termination and the requests of the company's board of directors," the defendant "refused to return" the plaintiff's trade secret information. No. 19-cv-351, 2019 WL 2361047, at *5 (E.D. Va. June 4, 2019). "Even assuming [the defendant] *at one time* would have rightfully had control over that information as the company's president," the court continued, "*his refusal to return that information after he was terminated is enough to qualify as acquisition through improper means . . . .*" *Id.* (emphasis added). "Put another way," the court concluded, the plaintiff did not need to "allege that [the defendant] outright stole the relevant information; to the extent he had been entrusted with the information as president, that trust was limited in nature and would have terminated once the [employment] relationship . . . had ended." *Id.*; *see also Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 132 (D. Md. 2020) (plaintiff satisfied DTSA's "improper means" requirement, because even though "in the course of [defendant's] employment with [plaintiff], he had access to [plaintiff's] underwritings," he "downloaded those underwritings" for an improper purpose).

So, too, here. In the Complaint, Beast alleges that "[i]n the days leading up to [Nabors'] termination of employment," and after he "no longer had primary responsibilities in IT," Nabors

"systematically exfiltrated thousands of Beast's confidential files, taking them outside the Company's corporate IT network and onto an unidentified device." (Compl. ¶¶ 2, 7, and 10.) Nabors "then tried to cover those actions up by wiping his laptop, which had access to those files and records of his actions." (*Id*. ¶ 10.) Subsequently, "[w]hen Beast confronted Nabors about the information he had downloaded, he lied and claimed the files had been 'wiped' on his last day of employment . . . ." (*Id*. ¶ 12.) "When pressed further, Nabors lied again" by "claim[ing] that the mass download of Beast information was a routine 'backup' he conducted in the 'normal course of business,'" even though Beast "did not have a routine 'backup' policy under which thousands of confidential documents would be mass downloaded to an unidentified external device." (*Id*. ¶ 13.) Indeed, "[i]t was not even Nabors' responsibility to conduct such backups in the months leading up to his October 2024 termination, because Beast had removed him from his primary IT responsibilities as of December 2023." (*Id*. ¶¶ 14 and 56.) Beast "has repeatedly demanded that [Nabors] return the information he stole," but Nabors "has refused"; nor has he "permitted an inspection of his DropBox account" or "returned any of the information or documents he exfiltrated from Beast." (*Id*. ¶ 16.)

Thus, even assuming that Nabors at one time was authorized to access Beast's trade secrets, that authorization terminated with the employment relationship, if not sooner when his IT role concluded. (*Id*. ¶¶ 4, 7.) Nabors' refusal to return the information after his termination (*id*. ¶¶ 10 and 16) "is enough to qualify as acquisition through improper means . . . ." *See OROS, Inc.*, 2019 WL 2361047, at *5; *Brightview Grp., LP*, 441 F. Supp. 3d at 113 (plaintiff satisfied DTSA's "improper means" requirement, because even though "in the course of [defendant's] employment with [plaintiff], he had access to [plaintiff's] underwritings," he "downloaded those underwritings" for an improper purpose); *Heksa Corp. v. Qorvo US, Inc.*, No. 19-cv-1108, 2020 WL 5821078, at

*7 (M.D.N.C. Sept. 30, 2020) (plaintiff successfully pled "improper means" by alleging that defendant misappropriated trade secrets in violation of confidentiality agreement).[2]

### B. Beast states a claim for misappropriation of trade secrets under the NCTSPA.

*1. Beast sufficiently alleges that the misappropriation occurred in North Carolina.*

Nabors attacks Beast's North Carolina trade secret misappropriation claim by arguing that Beast "has not pled that the alleged misappropriation occurred in North Carolina." (ECF No. 18 at 6.) Again, he is wrong.

To state a claim under the NCTSPA, a plaintiff "must allege the misappropriation happened in North Carolina"—or at least provide "background that would allow the Court to draw a geographic inference." *VRX USA, LLC v. VRX Ventures, Ltd.*, No. 20-cv-409, 2020 WL 7229672, at *7 (W.D.N.C. Dec. 8, 2020).

Beast satisfies this requirement. The Complaint alleges that "[d]uring his time at Beast, Nabors routinely interacted with Beast's operations throughout the state of North Carolina." (Compl. ¶ 19.) Naturally, those interactions included Nabors' pre-termination exfiltration of "thousands of confidential Beast documents, including but not limited to financial data, sensitive memoranda regarding business transactions, private employee compensation information, and capitalization tables containing highly sensitive information about Beast's investors." (*Id.* ¶ 2.) On November 15, 2024, after Nabors' termination, his counsel even informed Beast that *"'[a]ll MrBeast devices are in North Carolina' in Nabors' residence . . . ."* (*Id.* ¶ 50.)

---

[2] Because Beast states a federal DTSA claim, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. (Compl. ¶ 20.) Nabors' request to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) should be denied.

Beast is not asking—as Nabors argues—for the Court to draw an inference based solely on the parties' states of residence (ECF No. 18 at 6–7), but rather, on the specific allegations of conduct that occurred in North Carolina. The Complaint's factual allegations discuss Nabors' actual conduct on-site at the Beast facilities in North Carolina, including but not limited to installing cameras and other electronic devices within the server infrastructure physically located at the Beast facilities at which Nabors worked both during the time of the exfiltration of information from those same Beast servers and in the lead-up to his termination. (*See, e.g.*, Compl. ¶¶ 46–49.) Following Nabors' termination, Nabors told Beast that its equipment was physically located at his house in North Carolina, where he lived at the time. (*Id*. ¶ 50 ("'[a]ll MrBeast devices are in North Carolina' in Nabors' residence," and Nabors "'can facilitate someone being let into his home to return these devices.'")

These allegations are sufficient for this Court, at the very least, to "draw a geographic inference" that the complained-of conduct occurred in North Carolina as required. *VRX USA, LLC*, 2020 WL 7229672, at *7. After all, Beast explains in its Complaint that Nabors was physically located in North Carolina at the time of the misappropriation (working onsite at the Beast facilities), that at least one Beast device was used by Nabors to download information, and that Nabors even told Beast directly that other Beast devices were located at his home in North Carolina. (Compl. ¶¶ 2, 19, 46–51.) It would be absurd to argue that this is insufficient to place the events in-question in North Carolina, as it would effectively mean that Nabors left his house in North Carolina, went to work in North Carolina, then *left the state* to download information, came

home after he was done, and returned to work in North Carolina the next day after his excursion across state lines to download the information in question.[3]

> 2. *Beast sufficiently alleges that Nabors acquired its trade secrets without Beast's express or implied consent or authority.*

Nabors next faults Beast for failing to allege that he "appropriated [Beast's] trade secrets in order to open a competing business," suggesting that Beast was required to allege that Nabors "acquired the documents listed in Exhibit A *for disclosure or use*." (ECF No. 18 at 7 (emphasis added).) But disclosure and use are just possible forms of misappropriation under the NCTSPA; Beast is not required to allege them. Another form of misappropriation—which Beast *does* allege—occurs when the defendant "acquire[s]" trade secrets "without the express or implied consent or authority of the owner." N.C.G.S. § 66-155(2); *see also* N.C.G.S.A. § 66-152(1) ("'Misappropriation' means *acquisition*, disclosure, or use of a trade secret of another without express or implied authority or consent . . . .") (emphasis added).

The Complaint alleges misappropriation in the form of unauthorized acquisition. Specifically, "[w]ith neither express nor implied authority, Nabors misappropriated Beast's documents and other data by exfiltrating them to an unknown device and his personal DropBox account." (Compl. ¶ 69.) Nabors "had no legitimate business reason to access . . . or retain" these documents, "especially after December 2023, when he was stripped of his IT responsibilities and shifted to the Development Team." (*Id*. ¶ 56.) "And, certainly, he had no reason for syncing those files to a personal DropBox account that existed outside of Beast's servers, and to which Beast

---

[3] To the extent the Complaint's allegations do not sufficiently support that inference, Beast respectfully requests an opportunity to amend this claim to further clarify that the conduct occurred in North Carolina. *See Recon Group LLP v. Lowe's Home Ctrs., LLC*, 743 F. Supp. 3d 737, 749 (W.D.N.C. 2024) (granting leave to amend North Carolina Trade Secrets Protection Act claim to clarify that misappropriation occurred in North Carolina, because "a court should freely give leave to file an amended complaint when justice so requires") (citing Fed. R. Civ. P. 15(a)(2)).

does not have access, such that he could access them through DropBox even after trying to 'wipe' his computer." (*Id.*) This is sufficient to state a claim. *See*, *e.g.*, *In re Wilson*, 248 B.R. 745, 750 (M.D.N.C. 2000) ("Once a [manufacturing] process has been adjudicated a trade secret, the law protects that secret from those who *obtain* it illegally. This is the essence of misappropriation, which is defined as the '*acquisition*, disclosure, or use of a trade secret of another'") (quoting N.C.G.S. § 66-152(1)) (emphasis added).

Nabors' authorities are inapposite because they concern other forms of misappropriation—disclosure and/or use. *See Modular Techs., Inc. v. Modular Solutions, Inc.*, No. COA06-813, 2007 WL 2034046 (N.C. Ct. App. 2007) (concerning alleged disclosure or use of trade secrets); *Static Control Components, Inc. v. Summix, Inc.*, No. 08-cv-928, 2012 WL 1379380 (M.D.N.C. Apr. 20, 2012) (same); *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 542 S.E.2d 689 (N.C. Ct. App. 2001) (same).

### C. Beast states a claim for breach of contract.

Nabors argues that Beast's claim for breach of contract should be dismissed because it was not supported by consideration. (*See* ECF No. 18 at 7.) But it is axiomatic under North Carolina law that "a confidentiality agreement need not be supported by additional consideration if the agreement does not constitute a restraint of trade." *Amerigas Propane, L.P. v. Coffey*, No. 14-cv-376, 2015 WL 6093207, at *8 (N.C. Super. Ct. Oct. 15, 2015); *Sirona Dental, Inc. v. Smithson*, No. 14-cv-714, 2015 U.S. Dist. LEXIS 6080, at *6 (W.D.N.C. Jan. 20, 2015) (same).

Here, the agreement in question is Nabors' nondisclosure agreement. That agreement—attached to the Complaint as **Exhibit B** (ECF No. 1-2)—is a confidentiality agreement, as it merely prohibits him from "us[ing], divulg[ing], disclos[ing], [or] communicating to any person, firm, corporation, or any other third party . . . any Proprietary or Confidential Information" of Beast.

(Compl., Exh. B ¶ 2.) It places no restrictions on Nabors' participation in competitive business activity. (*See generally id.*) Thus, no additional consideration is necessary for this confidentiality agreement. *See Amerigas Propane, L.P.*, 2015 WL 6093207, at *8 (no additional consideration necessary if court determines that nondisclosure agreement "merely seeks to prevent [defendant's] disclosure or use of [plaintiff's] confidential information," and "does not seek to "prevent [defendant] from engaging in a similar business in competition with [plaintiff]").

Moreover, even if Nabors were correct that only a "change in compensation, commission, duties or nature of employment could be deemed valid consideration" for his nondisclosure agreement (ECF No. 18 at 7–8), his Motion should still be denied because Beast pled that. Specifically, Nabors entered the nondisclosure agreement in October 2023. (Compl., Exh. B.) Subsequently, "[i]n December 2023, Beast shifted Nabors away from IT responsibilities and placed him on the Company's Development Team. From that point forward, Nabors no longer had primary responsibilities in IT." (Compl. ¶ 7.) Rather, as a member of the Development Team, Nabors "tackl[ed] issues ranging from content production to fundraising to political advocacy." (*Id*. ¶ 8.) Thus, even under Nabors' interpretation of North Carolina law, Beast states a breach of contract claim because Beast's allegations detail that Nabors' employment and responsibilities were changed after he entered into the nondisclosure agreement, which constitutes adequate consideration. (Compl. ¶ 7.)

**D.     Beast states a claim for conversion.**

In North Carolina, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barnhill Contracting Co. v. Oxendine*, 105 F. Supp. 3d 542, 551 (E.D.N.C. 2015). North Carolina appropriately "allows a claim for conversion to be premised

13
Case 4:25-cv-00062-D-RJ     Document 19     Filed 07/07/25     Page 13 of 18

on something other than *just* the denial of the rights to the property." *Bridgetree, Inc. v. Red F Marketing LLC*, No. 10-cv-228, 2013 WL 443698, at *15 (W.D.N.C. Feb. 5, 2013) (emphasis in original). A claim is sufficient if it alleges merely a "violation of the plaintiff's dominion over or rights in the property." *Id*. (quoting *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (N.C. Ct. App. 2001)). In other words, the alleged conduct does "not need to completely deprive Plaintiff use and access to" the converted property, so long as it violates the plaintiff's dominion over it in some fashion. *Bridgetree, Inc.*, 2013 WL 443698, at *15.

*Springs v. Mayer Brown, LLP* is directly on point. There, the court declined to dismiss a conversion claim based on an employee's making of "paper and electronic copies of digitally stored proprietary and confidential documents by surreptitiously searching [the company's] electronic files after being notified of her impending termination." No. 09-cv-352, 2012 WL 366283, at *9 (W.D.N.C. Jan. 27, 2012). "That plaintiff did not destroy the database or exclude [the company] from its digitally stored material is of no moment," the court held, because "what constitutes 'unauthorized' possession or interference with another's ownership of goods or chattels depends on the circumstances under which such interference arose." *Id*. "Clearly," the employee "ha[d] taken away from the [company] things of value that she was not authorized to take . . . ." *Id*.; *see also Bridgetree, Inc.*, 2013 WL 443698, at *14 (declining to dismiss conversion claim where, "around the time of his resignation from Plaintiff, [defendant-employee] downloaded electronic copies of Plaintiffs' digitally-stored proprietary information and confidential documents").

The Complaint successfully states this claim. Beast alleges that it "has an ownership interest in all the documents and other data Nabors exfiltrated" (Compl. ¶ 85); "[i]n the days leading up to his termination of employment," Nabors "wrongfully exfiltrated [those] documents

14
Case 4:25-cv-00062-D-RJ    Document 19    Filed 07/07/25    Page 14 of 18

and other data and has refused to return them after multiple demands" (*id.* ¶¶ 2 and 86); and at the time of the exfiltration, Nabors' "access to, and download of, thousands of confidential Beast documents was well outside his scope of authority" because "[i]n December 2023, Beast shifted Nabors away from IT responsibilities . . . ." (*Id.* ¶¶ 7 and 40.)

Nabors argues that because he allowed Beast "into his home" in November 2024, he never "refus[ed]" to comply with Beast's demand for its property, defeating the conversion claim. (ECF No. 18 at 9.) Nabors misinterprets both the Complaint and the law governing it. Beast does allege that Nabors permitted Beast into his North Carolina home in November 2024 (Compl. ¶ 50), but the sole purpose of that visit was to secure the return of Beast-issued *computers and other hardware*. (*Id.*) To date, and as alleged in the Complaint, Nabors "has refused to return Beast's confidential *documents* . . . ." (*Id.* ¶ 58 (emphasis added); *see also id.* ¶ 86 ("Nabors wrongfully exfiltrated Beast's *documents and other data* and has refused to return them after multiple demands") (emphasis added).)

In any event, refusal to return property is not necessary to give rise to a claim of conversion. It is merely a form of conversion. *See Barnhill Contracting Co.*, 105 F. Supp. 3d at 551 ("Under North Carolina law, even if a Defendant rightfully comes into possession of the goods, a conversion occurs when the rightful owner demands return of the goods and the Defendant refuses") (citation omitted). And even if refusal were required, Beast has adequately alleged it. (Compl. ¶¶ 58 and 86.)

Nabors' other argument—that conversion claims are only cognizable for "tangible" property—fares no better. While it is true that a conversion claim does not lie for truly "abstract interests such as business opportunities and expectancy interests," (*Kasparov, PTE LTD v. Zacherl*, No. 22-cv-503, 2023 WL 4752376, at *4 (E.D.N.C. July 25, 2023) (Dever III, J.)), electronically-

15
Case 4:25-cv-00062-D-RJ   Document 19   Filed 07/07/25   Page 15 of 18

stored documents and data are tangible. *See Bridgetree, Inc.*, 2013 WL 443698, at *15 (for purposes of a conversion claim, "computer files" are "tangible property albeit in electronic form"); *Springs*, 2012 WL 366283, at *9 (upholding conversion claim based on, *inter alia*, "electronic copies of digitally stored proprietary and confidential documents").

Nabors' authorities are inapposite. In *Norman v. Nash Johnson & Sons' Farms, Inc.*, the court held that "intangible interests such as business opportunities and expectancy interests" are not "subject to a conversion claim." 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (N.C. Ct. App. 2000). Beast does not dispute this; but neither does it claim that Nabors converted business opportunities or expectancy interests. Beast alleges that Nabors converted documents in electronic form. (Compl. ¶¶ 2, 85, and 86.)

In *TSC Research, LLC v. Bayer Chem. Corp.*, the court dismissed a conversion claim because "[t]he description of property in the complaint . . . *commingles* tangible and intangible property by asserting that Defendants acquired 'proprietary technical and business information,' *some, but not all*, of which was memorialized in document form." 552 F. Supp. 2d 534, 542 (M.D.N.C. 2008) (emphasis added). Thus, there was "no way for the parties or the Court to discern which part of Plaintiff's property was actually subject to conversion, that is, capable of being returned upon demand." *Id*. at 542–43. Beast's Complaint does not allege any such commingling of tangible "documents" and intangible "information" conveyed in non-documentary form. It alleges purely the conversion of "thousands of confidential Beast *documents*" (Compl. ¶ 2), fully capable of being returned upon demand.

### E. A permanent injunction and declaratory relief are appropriate.

Nabors' sole basis for opposing a permanent injunction and declaratory relief is the purported inadequacy of Beast's claims under Rule 12(b)(6). (ECF No. 18 at 10–11.) Beast's

claims are all sufficiently pled, so its requests for a permanent injunction and declaratory relief are appropriate. "It remains for adjudication at a later date," based on evidence to be proffered by the parties, "whether such a declaration and injunction is warranted under the circumstances of this case." *Courthouse News Serv. v. Bryce*, No. 23-cv-280, 2023 WL 7287878, at *7 (E.D.N.C. Nov. 3, 2023) (denying motion to dismiss brought under Rule 12(b)(6)). Until that time, Beast's requests for a permanent injunction and declaratory relief should remain undisturbed. *Id*.

## IV. CONCLUSION

For the foregoing reasons, Beast respectfully requests that this Court deny Nabors' motion to dismiss.

Dated: July 7, 2025                                     ROBINSON, BRADSHAW & HINSON, P.A.

/s/ Douglas M. Jarrell
Douglas M. Jarrell
N.C. State Bar No. 21138
djarrell@robinsonbradshaw.com
600 S. Tyron Street
Suite 2300
Charlotte, NC 28202
Telephone: (704) 377-8309
Facsimile: (704) 378-4000

PAUL HASTINGS LLP

Jennifer S. Baldocchi
jenniferbaldocchi@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Emily R. Pidot
Kaveh Dabashi
emilypidot@paulhastings.com
kavehdabashi@paulhastings.com
200 Park Avenue
New York, NY 10166

Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Brian A. Featherstun
brianfeatherstun@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

*Attorneys for Plaintiff*
*MrBeastYouTube LLC*